UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FELIX RUBIO HERNANDEZ,<br><br>                Plaintiff,<br><br>    v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ALEJANDRO MAYORKAS, AND UR M. JADDOU,<br><br>                Defendants. | CASE NO. C22-904 MJP<br><br>ORDER DENYING MOTION TO DISMISS |

This matter comes before the Court on Defendants' Motion to Dismiss. (Dkt. No. 7.) Having reviewed the Motion, Plaintiff's Opposition (Dkt. No. 8), the Reply (Dkt. No. 12), and all supporting materials, the Court DENIES the Motion.

**BACKGROUND**

Plaintiff Felix Rubio Hernandez challenges the denial of his application for an adjustment of status from a U nonimmigrant visa holder to a lawful permanent resident. He pursues one claim under the Administrative Procedures Act (APA) and asks the Court to declare unlawful

and set aside Defendants' decision on his application and remand the matter with instructions to re-adjudicate the application without considering certain inadmissible evidence.

Defendants U.S. Citizenship and Immigration Services (USCIS), Alejandro Mayorkas, and Ur M. Jaddou, move to dismiss Rubio Hernandez's complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. Defendants argue that a provision in the Immigration and Naturalization Act (INA) strips the Court of subject matter jurisdiction over the claim. See 8 U.S.C. § 1252(a)(2)(B)(i). They also argue that the agency decision is unreviewable because there is no meaningful standard against which to measure Rubio Hernandez's APA claim. To situate these arguments, the Court reviews the statutory background and then the relevant factual background.

**A.  Statutory Background**

Congress created "U" nonimmigrant classification, commonly known as the "U visa," to protect noncitizen victims of serious crimes and to increase public safety by encouraging those noncitizens to report such crimes to law enforcement officers and to assist in the prosecution of such crimes. See Victims of Trafficking and Violence Protection Act of 2000 (VTVPA), Pub.L. 106–386, 114 Stat. 1464 (2000), codified at §§ 101(a)(15)(U), 214(p), and 245(m) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101(a)(15)(U), 1184(p), and 1255(m).

To obtain a U visa, the applicant must satisfy several criteria. See 8 U.S.C. §§ 1101(a)(15)(U), 1184(p)(1); 8 C.F.R. § 214.14(b). The U visa applicant must also either be admissible to the United States or be granted a waiver for any ground of inadmissibility that pertains to them. See 8 U.S.C. § 1184(a)(1); 8 C.F.R. § 214.1(a)(3)(i). Congress enacted a specific inadmissibility waiver for those seeking a U visa, making nearly any ground of inadmissibility waivable "in the Attorney General's discretion . . . if the Secretary of Homeland

1  Security considers it to be in the public or national interest." 8 U.S.C. § 1182(d)(14); see also 8
2  C.F.R. § 212.17(b).

3        In creating the U visa, Congress also provided a pathway to permanent residence for
4  victims of violent crime. See VTVPA § 1513(a)(2)(C), 114 Stat. at 1534. To be eligible for
5  adjustment of status, a U visa holder must meet two statutory requirements. First, the applicant
6  must demonstrate three years of continuous physical presence in the United States since being
7  admitted as a U nonimmigrant. 8 U.S.C. § 1255(m)(1)(A). Second, the applicant must establish
8  that their "continued presence in the United States is justified on humanitarian grounds, to ensure
9  family unity, or otherwise in the public interest." 8 U.S.C. § 1255(m)(1)(B); see also 8 C.F.R. §
10 245.24(b)(6), (d)(10). Regulations implementing the U visa pathway to permanent residence also
11 require the applicant to "show[] that discretion should be exercised in his or her favor." 8 C.F.R.
12 § 245.24(d)(11). In exercising its discretion, USCIS (a component of the Department of
13 Homeland Security (DHS)) may "take into account all factors, including acts that would
14 otherwise render the applicant inadmissible," and weigh an applicant's "adverse factors" against
15 "mitigating equities." Id. USCIS will generally deny an application "in cases where the applicant
16 has committed or been convicted of a serious violent crime, a crime involving sexual abuse
17 committed upon a child, or multiple drug-related crimes, or where there are security- or
18 terrorism-related concerns." Id.

19 **B.    Factual Background**

20       Rubio Hernandez's APA claim challenges the denial of his application for permanent
21 residency under 8 U.S.C. § 1255(m).  Before reviewing the application and denial, the Court
22 considers facts related to Rubio Hernandez's U visa application.

23
24

ORDER DENYING MOTION TO DISMISS - 3

1          Rubio Hernandez sought and obtained U nonimmigrant status "after suffering domestic
2   violence and assault, and assisting law enforcement with the investigation and prosecution of
3   those crimes." (Compl. ¶¶ 1 25.) As part of his U visa application, Rubio Hernandez provided
4   evidence regarding his criminal history, including: (1) his 1991 petty theft conviction; (2) his
5   arrest for simple assault in 2001, where the charge was dismissed; and (3) an arrest for simple
6   assault in 2004, for which he was later found not guilty. (Id. ¶ 24.) USCIS approved Rubio
7   Hernandez's request for a waiver of inadmissibility on October 20, 2014, thus finding his
8   admission as a U nonimmigrant "to be in the public or national interest." (Id. ¶ 25.) And Rubio
9   Hernandez's U nonimmigrant status became valid from October 1, 2014 to September 30, 2018.
10  (Id.)
11         In October 2017, Rubio Hernandez applied to the USCIS for a U-based adjustment in
12  status to become a legal permanent resident. (Id. ¶¶ 2, 26.) In December 2018, USCIS asked for
13  additional evidence about Rubio Hernandez' criminal history from 1991 through 2013. (Id. ¶ 27.)
14  The request sought "police reports, court records, evidence of sentence completion, and an
15  explanatory affidavit regarding": (1) a 1991 arrest and conviction for petty theft; (2) a 2000
16  arrest for driving under the influence; (3) a 2001 arrest for driving with a suspended license; (4) a
17  2004 arrest for assault in the fourth degree for which Rubio Hernandez was found not guilty; (5)
18  a 2005 arrest by U.S. Customs and Border Protection; (6) a 2013 fourth degree assault arrest and
19  conviction; and (7) a 2013 criminal trespass case that was dismissed. (Id.) The request also
20  sought "an explanation as to why Mr. Rubio Hernandez did not disclose all of his arrests" with
21  his application to become a legal permanent resident. (Id.) Rubio Hernandez provided the
22  requested information to the extent that it was available. (Id. ¶ 28.) He provided records
23  demonstrating: "(1) his 2012 arrest by CBP resulted in no criminal convictions but placed him in
24

removal proceedings, which were later dismissed by an immigration judge in 2016; (2) he was found not guilty of the 2004 assault arrest; (3) the charges for his 2001 fourth degree assault arrest were dismissed, and (4) his arrest for criminal trespass in August 2013 did not result in any filed charges." (Id.) Rubio Hernandez "also asserted that police reports are not part of the record of conviction and should not be requested because of the reports' inherent unreliability" and "that no further records were available in relation to his 1991 arrest and conviction[.]" (Id.) He also submitted "additional records for his 2000 arrest for a DUI (which resulted in a conviction for negligent driving) and for his 2013 fourth degree assault arrest and conviction." (Id.)

In May 2019, USCIS issued a Notice of Intent to Deny (NOID) the petition. (Compl. ¶ 29.) USCIS faulted Rubio Hernandez for failing to provide police reports related to five arrests in 2000, 2001, 2004, and 2013 "even though three of the charges were either dismissed or resulted in a finding of not guilty." (Id.) USCIS reasoned that Rubio Hernandez's history of "Petty theft, arrests for Assault, and Negligent Driving poses a significant risk to the safety and property of others." (Id. ¶ 30.) USCIS also explained that it did not have sufficient evidence that discretion was warranted to approve the petition given the prior arrests and convictions. (Id. ¶ 32.) Rubio Hernandez then timely responded to the NOID. (Compl. ¶ 33.) He explained the absence of records related to three of the arrests and provided the police report for his 2013 arrest for fourth degree assault and criminal trespass. (Id.) These records showed the criminal trespass charge was dismissed with prejudice. (Id.)

On December 16, 2020, USCIS denied the application. (Compl. ¶¶ 34-38.) USCIS reasoned that it was improper to exercise its discretion given its concerns about certain incomplete or redacted arrest records, a missing police report, and the absence of an explanation about a 2004 arrest for which Rubio Hernandez was found not guilty. (Id. ¶¶ 35-37.) "USCIS

determined that it was 'unable to comprehensively weigh the positive equities in this case against [the] negative factors.'" (Id. ¶ 38 (quotation in original).) USCIS denied the application "explaining that Mr. Rubio did not establish his adjustment was warranted on humanitarian grounds, to ensure family unity, or in the public interest, as required by 8 U.S.C. § 1225(m)(1)(B)." (Id.)

Rubio Hernandez then appealed to the agency's Administrative Appeals Office (AAO). (Compl. ¶ 39.) He argued that USCIS erred in requiring him to submit police records that did not exist, and that the decision was arbitrary and capricious in balancing the equities and concluding that he did not submit sufficient documentary evidence to support the adjustment of status. (Id.) On December 17, 2021, the AAO dismissed the appeal, noting that the positive equities did not outweigh his criminal history. (Id. ¶ 40.) The AAO noted its concern that the arrests for assault in 2001, 2004, and 2013 were "violent in nature." (Id. ¶ 41.) The AAO also faulted Rubio Hernandez for not providing sufficient information about his 2000, 2001, and 2004 arrests. (Id. ¶ 42.) And the AAO concluded that Rubio Hernandez's explanation of his 2013 arrest were contradicted by the police reports suggesting the "relatively recen[t]" crimes were "serious and violent [in] nature." (Id. ¶ 43.)

Rubio Hernandez filed suit under the APA, 5 U.S.C. § 702. He alleges that the denial of his application was arbitrary and capricious and not in accordance with the law. (Compl. ¶¶ 44-52.) He seeks an order: (1) setting aside and declaring unlawful the Department of Homeland Security's (DHS) decision on his application; and (2) instructing DHS to remand the matter to USCIS with instructions to re-adjudicate [his] . . . adjustment of status application in accordance with the law." (Id. Prayer for Relief (2) & (3).)

# ANALYSIS

**A.    Legal Standard**

Defendants move to dismiss under Rule 12(b)(1), asserting a facial challenge to the Court's subject matter jurisdiction. (Mot. at 5.) "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). "The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a motion to dismiss for lack of subject matter jurisdiction." In re Dynamic Random Access Memory (DRAM) Antitrust Litig., 546 F.3d 981, 984 (9th Cir. 2008). "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." Id. at 984–85.

Here, Rubio Hernandez invokes the Court's jurisdiction under the APA, 5 U.S.C. §§ 704, 706, to review Defendants' decision under the INA. The claim thus falls within the Court's original jurisdiction. 28 U.S.C. § 1331. Defendants argue that the INA strips the Court of jurisdiction notwithstanding "the strong presumption that Congress intends judicial review of administrative action." Bowen v. Michigan Acad. of Fam. Physicians, 476 U.S. 667, 670 (1986).

**B.    The INA Does Not Deprive the Court of Jurisdiction**

Defendants argue that a provision in Section 1252 of the INA—entitled "Judicial review of orders of removal"— strips the Court of subject matter jurisdiction even though Rubio Hernandez does not challenge an order of removal. As Rubio Hernandez correctly points out, the jurisdiction-stripping provision applies only to removal proceedings, and not to his administrative appeal outside of the removal context.

To analyze the arguments, the Court examines: (1) jurisdiction-stripping provision and the statute in which it resides; (2) existing authority on whether the provision reaches outside of the removal context; and (3) the reasons why the provision applies only to removal proceedings.

**1.      The jurisdiction-stripping provision and its statutory context**

Defendants' argument turns on a section of the INA entitled "Judicial review of orders of removal," 8 U.S.C. § 1252. Defendants focus on Subsection (a)(2), which delineates "Matters not subject to judicial review." 8 U.S.C. § 1252(a)(2). Within that subsection, Defendants identify Subparagraph (B), entitled "Denials of discretionary relief," as the operative provision barring judicial review of Rubio Hernandez's claim. 8 U.S.C. § 1252(a)(2)(B)(i). Subparagraph (B) states, in relevant part:

> Notwithstanding any other provision of law (statutory or nonstatutory) . . . and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
> (i) any judgment regarding the granting of relief under section . . . 1255 of this title. . . .

8 U.S.C. § 1252(a)(2)(B)(i). The "subparagraph (D)" to which Subparagraph (B) refers contains a savings clause permitting the court of appeals to review "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D). And "section 1255" is the operative section of the INA under which Rubio Hernandez sought his adjustment of status.

According to Defendants, Subparagraph (B) broadly strips the Court of jurisdiction over "any judgment regarding the granting of relief under section . . . 1255" "regardless of whether the judgment, decision, or action is made in removal proceedings." 8 U.S.C. § 1252(a)(2)(B)(ii); (Mot. at 7). Defendants assert that this latter phrase—"regardless of whether the judgment, decision, or action is made in removal proceedings"— must be read to mean that Subparagraph

1 | (B) applies even if the plaintiff is not challenging a removal order or in removal proceedings.

2 | (Mot. at 7.)

### 2.  Existing authority provides limited guidance

Neither the Supreme Court nor the Ninth Circuit has squarely addressed whether Subparagraph (B) applies outside of removal proceedings or expressly endorsed Defendants' reading of the law. The Court reviews the existing case law and finds there to be an absence of binding authority on the novel question presented.

Defendants suggest that the Supreme Court's decision in Patel v. Garland, ___ U.S. ___, 142 S. Ct. 1614 (2022), functionally forecloses any argument that Subparagraph (B) is limited to removal proceedings. This argument overreaches. The majority in Patel expressly declined to reach the question of whether Subparagraph (B) applies outside of the removal context. See Patel, 146 S. Ct. at 1626 ("The reviewability of [USCIS] decisions is not before us, and we do not decide it."). That issue fell outside the scope of review because the plaintiff faced an order of removal, unlike Rubio Hernandez. The majority did speculate in dicta that "it is possible that Congress did, in fact, intend to close that door"—referring to discretionary determinations made outside of the removal context. Id. But as the dissent notes, the majority's musings on congressional intent was "a hunch about unexpressed legislative intentions" on an issue not briefed and outside the scope of review. Id. at 1637 (Gorsuch, J., dissenting). And as Justice Gorsuch noted, contrary to the majority's dicta, the Supreme Court has reviewed a challenge to the denial of adjustment of status under § 1255 without concluding that Subparagraph (B) deprives the Court of jurisdiction. See id. at 1636 (Gorsuch, J., dissenting) (citing Sanchez v. Mayorkas, 593 U.S. ___, 141 S. Ct. 1809 (2021)). As Justice Gorsuch explained, "individuals frequently seek to adjust their status and secure a green card outside the removal context . . .

1  [a]nd when the government rejects an application for adjustment of status in these cases,
2  individuals routinely seek judicial review in district court." Id. (citing Sanchez, 593 U. S. \_\_\_,
3  141 S. Ct. 1809, 1812 (2021)). Patel merely confirms that Subparagraph (B) has not been
4  invoked to foreclose review of the kinds of claims Rubio Hernandez pursues here. Given the
5  limited reach of the opinion, and the dissent's accurate criticism of the majority's dicta, Patel
6  does not support to Defendants' position.

7       Ninth Circuit case law similarly leaves unresolved whether Subparagraph (B) applies
8  outside of the removal challenges. In 2003, in a case challenging the denial of immigrant
9  investor visa applications, the Ninth Circuit expressly declined to determine whether
10 Subparagraph (B) applies outside of the context of removal proceedings. See Spencer Enters.,
11 Inc. v. United States, 345 F.3d 683, 692 (9th Cir. 2003). The court explained that because "the
12 decision whether to issue an immigrant investor visa is not discretionary, we need not decide
13 whether § 1252(a)(2)(B)(ii) applies outside the context of removal proceedings." Id. It noted that
14 even if Subparagraph (B) applied, "it would not preclude jurisdiction in this case" because the
15 decision was non-discretionary. Id. Since Spencer, the Court has applied the jurisdiction
16 stripping provision of Subparagraph (B) outside of the removal context. See Hassan v. Chertoff,
17 593 F.3d 785 (9th Cir. 2010) (per curiam); Gebhardt v. Nielsen, 879 F.3d 980 (9th Cir. 2018);
18 Poursina v. United States Citizenship & Immigr. Servs., 936 F.3d 868 (9th Cir. 2019). But in
19 each decision, the Ninth Circuit simply assumed without discussion that Subparagraph (B)
20 applies outside of the removal context. See Hassan, 593 F.3d at 788; Gebhardt, 879 F.3d at 984;
21 Poursina, 936 F.3d at 871. This leaves open the question of whether Subparagraph (B) properly
22 applies to the issue presented in this case. See Brecht v. Abrahamson, 507 U.S. 619, 631 (1993)
23 (noting that because the Court had "never squarely addressed the issue" and merely "assumed the
24

ORDER DENYING MOTION TO DISMISS - 10

applicability" of a standard, it was "free to address the issue on the merits"); Amalgamated Transit Union Loc. 1309, AFL-CIO v. Laidlaw Transit Servs., Inc., 435 F.3d 1140, 1146 n.5 (9th Cir. 2006) (explaining that a prior Ninth Circuit decision was not "controlling authority" because it merely "assumed without decision" that a certain rule applied).

The Court therefore considers the issue presented here to be one of first impression without controlling authority.

### 3. Subparagraph (B) has no application outside of removal proceedings

Having considered the arguments of the parties, the Court finds that Subparagraph (B) applies only where there is a challenge to a removal order and not to Rubio Hernandez's challenge to the denial of his request for adjustment of status unrelated to removal proceedings.

The Court's analysis starts with the "familiar principle of statutory construction: the presumption favoring judicial review of administrative action." Kucana v. Holder, 558 U.S. 233, 251 (2010). "Under that well-settled and strong presumption [of judicial review of administrative action], when a statutory provision is reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review." Guerrero-Lasprilla v. Barr, ___ U.S. ___, 140 S. Ct. 1062, 1069 (2020) (citation and quotation omitted). This principle has been "consistently applied[,] . . . particularly to questions concerning the preservation of federal-court jurisdiction." Kucana, 558 U.S. at 251. The Court should not construe a statute to bar judicial review of agency action absent "'clear and convincing evidence' to dislodge the presumption." Id. at 252 (citation omitted).

By analyzing Subparagraph (B) in the context of the overall statute, the Court finds that it applies only to removal actions. See Davis v. Michigan Dep't of Treasury, 489 U.S. 803, 809

(1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."); see also Patel, 142 S.Ct. at 1622 (looking to "§ 1252(a)(2)(B)(i)'s text and context" to define the reach of the word "judgment" in the provision). The analysis must begin with Section 1252's title, which expressly concerns "Judicial review of orders of removal." 8 U.S.C. § 1252. This alone is strong evidence that Subparagraph (B) must be limited to review of removal orders, not other USCIS actions. In addition, all of the other subparagraphs of Section 1252(a)(2)—where Subparagraph (B) resides—focus on orders of removal. Subparagraph (A) is entitled "Review relating to section 1225(b)(1)," which concerns a Department of Homeland Security removal orders for "aliens who have not been admitted or paroled," including asylum seekers. 8 U.S.C. § 1252(a)(2)(A); 8 U.S.C. § 1225(b)(1). Subparagraph (C) expressly applies to "any final order of removal against an alien who is removable by reason of having committed a criminal offense. . . ." 8 U.S.C. § 1252(a)(2)(C). And Subparagraph (D) is a savings clause that permits judicial review of any constitutional claims or questions of law that would otherwise be barred from review under Subparagraphs (B) and (C). 8 U.S.C. § 1252(a)(2)(D). Subparagraph (D) explains that such claims may still be heard through a "petition for review filed with the appropriate court of appeals." 8 U.S.C. § 1252(a)(2)(D). And the phrase "petition for review" is used consistently in the statute to refer to orders of removal, not other discretionary USCIS determinations. See 8 U.S.C. § 1252(a)(5). And, as Rubio Hernandez points out, all of the remaining subsections of Section 1252 address judicial review of removal orders.

There are also practical reasons why, for someone in removal proceedings, Congress would prevent judicial review of ancillary agency determinations. Persons in removal proceedings have various alternative administrative avenues that, if successful, could terminate

the removal proceeding in their favor. Those include: (1) I-130 family visa petitions; (2) I-360 self-petitions (for victims of domestic violence); (3) I-360 Special Immigrant Juvenile Status petitions; (4) I-918 U visa petitions (for victims of violent crimes); (5) I-914 T visa petitions (for victims of trafficking); and (6) I-751 petitions to remove conditions of residence. Stripping jurisdiction of judicial review of these kinds of applications for someone in removal helps consolidate judicial review and avoid piecemeal litigation over the entire removal process. See Guerrero-Lasprilla, 140 S. Ct. at 1070 (noting that "Congress intended the zipper clause [of Section 1252(b)(9)] to 'consolidate judicial review of immigration proceedings into one action in the court of appeals'" (quoting INS v. St. Cyr, 533 U.S. 289, 313 (2001)). And it also explains why Subparagraph (B) refers to determinations made outside of the removal context but is nonetheless limited to those who are in removal proceedings.

Taken together, Subparagraph (B)'s text and context confirm that it strips jurisdiction only where the plaintiff is in removal proceedings. This conclusion abides by the Supreme Court's dictate "not [to] look merely to a particular clause, but consider [it] in connection with . . . the whole statute" in light of its "statutory placement." Kucana, 558 U.S. at 245–46 (citation omitted). Here, the entire statutory section, from its title to the relevant subparagraphs, concerns judicial review of removal orders. The Court finds no indication that Congress intended it to reach beyond the removal context and strip jurisdiction over the kind of claim Rubio Hernandez pursues. To hold otherwise would require the Court to read Subparagraph (B) in isolation and apply it without any consideration of its statutory context. That deviates from Supreme Court guidance and finds no reasoned support in either the statute or logic. See Kucana, 558 U.S. at 245–46. The Court finds that it has jurisdiction over Rubio Hernandez's claim under the APA. And on this basis the Court DENIES the Motion to Dismiss.

**C.      Even if Subparagraph (B) Applies, Rubio Hernandez's Claim Survives**

As an alternative, the Court concludes that even if Subparagraph (B) applies, Rubio Hernandez's claim is properly presented to this Court.

Under Subparagraph (D), Rubio Hernandez may still seek "review of constitutional claims or questions of law" even if Subparagraph (B) applies. 8 U.S.C. § 1252(a)(2)(D). The Court may consider "questions of law," including "whether [the agency] failed to consider the appropriate factors or relied on improper evidence." Zamorano v. Garland, 2 F.4th 1213, 1221 (9th Cir. 2021) (citations omitted). This includes mixed questions of law and fact. See Guerrero-Lasprilla, 140 S. Ct. at 1070-71. But the Court cannot "reweigh [the] evidence" when USCIS makes a discretionary decision. See Anaya-Ortiz v. Holder, 594 F.3d 673, 676 (9th Cir. 2010). Under Subparagraph (D), the Court may, for example, consider challenges premised on the agency's "reliance on only uncorroborated arrest reports." Avila-Ramirez v. Holder, 764 F.3d 717, 722 (7th Cir. 2014). The Ninth Circuit has suggested that giving weight to uncorroborated arrest reports that contain hearsay would be legally improper. See Murphy v. INS, 54 F.3d 605, 611 (9th Cir. 1995); see also Olivas-Motta v. Holder, 746 F.3d 907, 918-19 (9th Cir. 2013) (Kleinfeld, J., concurring). The Board of Immigration Appeals itself has noted that it is "hesitant to give substantial weight to an arrest report, absent a conviction or corroborating evidence of the allegations contained therein," particularly where the petitioner denied the wrongdoing and the prosecution was declined. In re Arreguin, 21 I&N Dec. 38, 42 (B.I.A. 1995).

Rubio Hernandez challenges the agency's reliance on certain kinds of evidence, which presents a legal determination falling within Subparagraph (D)'s savings clause for judicial review. Specifically, Rubio Hernandez asserts that the agency improperly relied on charged offenses for which he was acquitted and on charges that were dismissed. He also challenges the

agency's determination that he was to blame for being unable to produce police reports that no longer exist for his 2001 and 2004 arrests. These are purely legal issues because they challenge the agency's legal authority to consider this evidence in weighing his application. See Zamorano, 2 F.4th at 1221. Rubio Hernandez does not challenge how the agency exercised its discretion under § 1255(m) and he does not ask the Court to substitute its judgment for the agency's. The relief Rubio Hernandez makes this clear. He merely desires the agency to perform its discretionary analysis without considering improper evidence. His challenge is therefore subject to judicial review even if the Court assumes Subparagraph (B) applies.

Defendants contend that Rubio Hernandez must present his challenge to the Ninth Circuit because Subparagraph (D) specifies that any question of law must be "raised upon a petition for review filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(2)(D). But as Rubio Hernandez correctly points out, he would be ineligible to file such a petition for review because he is not in removal proceedings and there is no final removal order to challenge. See 8 U.S.C. § 1252(a)(5), (b)(9). He would effectively be without any avenue for judicial review notwithstanding the savings clause Subparagraph (D).[1] And it would raise "substantial constitutional questions" if the Court were to conclude that the statute deprives Rubio Hernandez of any forum to pursue his legal claim against the agency. See St. Cyr, 533 U.S. at 300; Bowen, 476 U.S. at 681 n.12. So notwithstanding the plain language of Subparagraph (D) specifying the court of appeals as the judicial forum, the Court construes Subsection (D) in this unique circumstance to allow Rubio Hernandez to seek judicial review before this Court.

On this alternative basis, the Court DENIES the Motion.

---

[1] This highlights yet another reason why Subparagraph (B) should not be read to apply outside of removal actions. Doing so could nullify Subsection (D) and lead to absurd results.

### D. Review Remains Proper under the APA

Defendants argue that Rubio Hernandez's claims fall outside of the APA because the Secretary of Homeland Security's discretionary determination under section 1255(m)(1)(B) is beyond judicial review. That misconstrues the claims at issue and lacks merit.

As explained above, there is a strong presumption that agency actions are subject to review. See Guerrero-Lasprilla, 140 S. Ct. at 1069. But Defendants invoke an exception for "those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply, thereby leaving the court with no meaningful standard against which to judge the agency's exercise of discretion." Pinnacle Armor, Inc. v. United States, 648 F.3d 708, 718–19 (9th Cir. 2011) (citation and quotation omitted).

Defendants argue that the law governing Rubio Hernandez's request for adjustment of status, 8 U.S.C. § 1255(m), provides the agency broad discretion without a meaningful standard to allow judicial review. Specifically, the section gives the Secretary of Homeland Security discretion, in their "opinion," to determine whether "the alien's continued presence in the United States is justified on humanitarian grounds, to ensure family unity, or is otherwise in the public interest." 8 U.S.C. § 1255(m)(1)(B). The regulations implementing the statute confirm this discretion: "The decision to approve or deny a Form I-485 filed under [8 U.S.C. § 1255(m)] is a discretionary determination that lies solely within USCIS's jurisdiction." 8 C.F.R. § 245.24(f).

While the Court agrees that Section 1255(m)(1)(B) provides broad discretion, it finds that the APA still permits judicial review of Rubio Hernandez's claim. That is because Rubio Hernandez presents a legal challenge that does not ask the Court to substitute its own view on whether Rubio Hernandez's presence is "justified on humanitarian grounds, to ensure family unity, or is otherwise in the public interest." 8 U.S.C. § 1255(m)(1)(B). Instead, Rubio

Hernandez challenges the legality of the agency's reliance on certain evidence in making its determination under Section 1255(m)(1)(B). In the context of that claim, there are legal standards that apply and against which the Court may judge the agency's action. See <u>Avila-Ramirez</u>, 764 F.3d at 722; <u>Murphy</u>, 54 F.3d at 611; <u>Olivas-Motta</u>, 746 F.3d at 918-19 (Kleinfeld, J., concurring); <u>In re Arreguin</u>, 21 I&N Dec. at 42. The Court therefore finds that Rubio Hernandez is entitled to pursue his claim under the APA.

## CONCLUSION

Defendants have not convinced the Court that it lacks subject matter jurisdiction over this action. The Court finds that the jurisdiction-stripping provision of Subparagraph (B) has no application to this agency challenge outside of removal proceedings. Even if it did, the Court alternatively finds that Rubio Hernandez's legal challenge is carved out by Subparagraph (D) and properly brought before the Court. And the Court rejects Defendants' contention that the APA claim cannot proceed because of the broad, discretionary nature of the decision subject to review. Rubio Hernandez has presented a reviewable legal challenge. The Court therefore DENIES the Motion to Dismiss.

The clerk is ordered to provide copies of this order to all counsel.

Dated November 30, 2022.

Marsha J. Pechman
United States Senior District Judge