1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT
                             WESTERN DISTRICT OF WASHINGTON
9                                       AT SEATTLE

10      FELIX RUBIO HERNANDEZ,                        CASE NO. C22-904 MJP

11                      Plaintiff,                    ORDER ON CROSS-MOTIONS
                                                      FOR SUMMARY JUDGMENT
12             v.

13      UNITED STATES CITIZENSHIP
        AND IMMIGRATION SERVICES,
14      ALEJANDRO MAYORKAS, AND
        UR M. JADDOU,
15
                        Defendants.
16

17

18             This matter comes before the Court on the Parties' Cross-Motions for Summary

19      Judgment. (Dkt. Nos. 23, 25.) Having reviewed the Motions, the Responses and Replies (Dkt.

20      Nos. 26, 27), and all supporting materials, and having held oral argument on October 31, 2023,

21      the Court GRANTS Plaintiff's Motion and DENIES Defendants' Motion. The Court VACATES

22      the Agency's decision and REMANDS this matter for further review consistent with this Order.

23

24

# BACKGROUND

Plaintiff Felix Rubio Hernandez appeals the Defendant United States Citizenship and Immigration Services' (USCIS) denial of his discretionary request to have his immigration status changed from U nonimmigrant status (U Visa) to "lawful permanent resident" under 8 U.S.C. § 1255(m) (the "Application"). Rubio brings claims under the Administrative Procedures Act that USCIS's Administrative Appeals Office (AAO) acted arbitrarily and capriciously in denying his Application. He argues that the AAO committed legal error by: (1) improperly considering and weighing the fact of certain prior arrests in finding Rubio's "criminal history" outweighed the positive equities in support of his Application, (2) faulting Rubio for the absence of arrest records where no such records exist, and (3) taking inconsistent positions as between his Application and U Visa application.

The Court reviews the relevant statutory framework, Rubio's existing immigration status, the administrative process affecting his Application, and the AAO's decision on his Application.

## A.    Statutory Background

Congress created "U" nonimmigrant classification, commonly known as the "U visa," to protect noncitizen victims of serious crimes and to increase public safety by encouraging those noncitizens to report such crimes to law enforcement officers and to assist in the prosecution of such crimes. See Victims of Trafficking and Violence Protection Act of 2000 (VTVPA), Pub. L. 106–386, 114 Stat. 1464 (2000), codified at §§ 101(a)(15)(U), 214(p), and 245(m) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101(a)(15)(U), 1184(p), and 1255(m).

To obtain a U visa, the applicant must satisfy several criteria. See 8 U.S.C. §§ 1101(a)(15)(U), 1184(p)(1); 8 C.F.R. § 214.14(b). The U visa applicant must also either be admissible to the United States or be granted a waiver for any ground of inadmissibility that

1    pertains to them. See 8 U.S.C. § 1184(a)(1); 8 C.F.R. § 214.1(a)(3)(i). Congress enacted a

2    specific inadmissibility waiver for those seeking a U visa, making nearly any ground of

3    inadmissibility waivable "in the Attorney General's discretion . . . if the Secretary of Homeland

4    Security considers it to be in the public or national interest." 8 U.S.C. § 1182(d)(14); see also 8

5    C.F.R. § 212.17(b).

6         In creating the U visa, Congress also provided a pathway to permanent residence for

7    victims of violent crime. See VTVPA § 1513(a)(2)(C), 114 Stat. at 1534. To be eligible for

8    adjustment of status, a U visa holder must meet two statutory requirements. First, the applicant

9    must demonstrate three years of continuous physical presence in the United States since being

10   admitted as a U nonimmigrant. 8 U.S.C. § 1255(m)(1)(A). Second, the applicant must establish

11   that their "continued presence in the United States is justified on humanitarian grounds, to ensure

12   family unity, or otherwise in the public interest." 8 U.S.C. § 1255(m)(1)(B); see also 8 C.F.R. §

13   245.24(b)(6), (d)(10). Regulations implementing the U visa pathway to permanent residence also

14   require the applicant to "show[] that discretion should be exercised in his or her favor." 8 C.F.R.

15   § 245.24(d)(11). In exercising its discretion, USCIS (a component of the Department of

16   Homeland Security (DHS)) may "take into account all factors, including acts that would

17   otherwise render the applicant inadmissible," and weigh an applicant's "adverse factors" against

18   "mitigating equities." Id. USCIS will generally deny an application "in cases where the applicant

19   has committed or been convicted of a serious violent crime, a crime involving sexual abuse

20   committed upon a child, or multiple drug-related crimes, or where there are security- or

21   terrorism-related concerns." Id.

22

23

24

1

**B.    Existing Immigration Status**

2

  Rubio is a native and citizen of Mexico who has resided in the United States for over

3

thirty years, where he has been employed and paid taxes. (Compl. ¶ 21 (Dkt. No. 1); Answer ¶

4

21 (Dkt. No. 21); USAO_000550.[1]) Rubio also has children and grandchildren who are

5

American citizens. (See USAO_000432-433.) In 2011, Rubio's ex-wife and her cousin assaulted

6

Rubio, causing significant trauma. (USAO_000560.) After assisting the Snohomish County

7

Sherriff's Office and Prosecutor's Office in prosecuting the attackers, Rubio became eligible to

8

apply for U nonimmigrant status. (USAO_000559-62.) In October 2012, he applied for a U Visa

9

and requested a waiver of admissibility. (Compl. ¶ 24; USAO_000550, USAO_000712–13,

10

USAO_000744–45.)

11

  As part of his 2012 U Visa application, Rubio disclosed his prior contacts with law

12

enforcement, which included: (1) a 1991 conviction for petty theft; (2) a 2001 arrest for

13

domestic-violence-related assault in the fourth degree for which charges were dismissed; and (3)

14

a 2004 arrest for domestic-violence-related assault in the fourth degree that led to a not guilty

15

verdict. In October 2014, USCIS approved Rubio's request for the inadmissibility waiver,

16

finding his admission as a U nonimmigrant "to be in the public or national interest." 8 U.S.C. §

17

1182(d)(14); (Compl. ¶ 25; USAO_000745.) USCIS granted Rubio U nonimmigrant status,

18

making his U Visa valid from October 1, 2014, to September 30, 2018. (Compl. ¶ 25;

19

USAO_000744.)

20

21

22

23

[1] The administrative record, denoted with the "USAO_" Bates numbering, is found in the Declaration of Sydney Maltese (Dkt. No. 24).

24

**C.      Application to Become a Legal Permanent Resident**

In October 2017, Rubio applied to USCIS for a U-based adjustment in status to become a legal permanent resident (LPR). (Compl. ¶¶ 2, 26; USAO_000228.) He responded USCIS's December 2018 requests for further information, producing court records and explanations about arrests from 1991, 2000, 2001, 2004, 2012, and 2013. (USAO_000382–85;  USAO_000387-433, 000444-445.) In May 2019, USCIS issued a Notice of Intent to Deny  the Application, concluding that it did not have sufficient evidence that discretion was warranted to approve the Application given Rubio's prior arrests and convictions. (Compl. ¶¶ 29, 32; USAO_000460, USAO_000468-69.) USCIS identified further evidence that it wished to review before finalizing its decision. (Id.) After Rubio provided all available arrest records and further evidence USCIS requested, USCIS denied Rubio's Application in December 2020. (Compl. ¶ 34; USAO_000023–32.) USCIS balanced the positive and negative factors, and found that it should not exercise discretion to adjust Rubio's status given Rubio's "criminal history and years of unlawful presence in the United States." (USAO_000031.) The USCIS concluded that "the record does not contain sufficient evidence regarding some of [Rubio's] arrests to determine the level of risk of harm [he] may pose to the public." (Id.)

**D.      The AAO's Denial of Rubio's Application**

Rubio appealed the denial of his application to the Agency's Administrative Appeals Office (AAO). (Compl. ¶ 39; USAO_000014–21.) He argued that USCIS erred in requiring him to submit police records that did not exist, and that the decision was both arbitrary and capricious in how it balanced the equities and in its conclusion that he did not submit sufficient documentary evidence to support the adjustment of status. (Compl. ¶ 39; USAO–000039–43.) On December 17, 2021, the AAO dismissed the appeal after its de novo review, noting that

despite the positive equities, Rubio had not "demonstrated that he merits a favorable exercise of discretion to adjust his status to that of an LPR due to his criminal history." (USAO_000008.)

The Court briefly reviews the administrative record the AAO had before it concerning Rubio's encounters with law enforcement from 1991, 2000, 2001, 2004, 2012, and 2013:[2]

First, Rubio provided a Ventura County Superior Court docket sheet showing in 1991 he was arrested and convicted of petty theft for which he served a two-day sentence, evidence he paid an $80 court fine, and a confirmation that the case records were destroyed in 2005 and that no further court records existed. (USAO_000392–95, USAO_000410; USAO_000528-529.) Rubio also provided a 1991 arrest report stating Rubio "shoplifted packaged meat in Ralphs Grocery Store" and had but $1 on his person at the time of arrest. (USAO_000477-478).

Second, Rubio provided a Snohomish County District Court docket sheet showing that in 2000: (a) Rubio was charged with driving under the influence, negligent driving in the first degree, and driving without a license in the third degree, (b) the DUI charge was amended to negligent driving in the first degree; (c) he pleaded guilty to negligent driving and driving with a suspended license, (d) the 90 day jail sentence was suspended provided that Rubio complied with alcohol and victim treatment programs; and (e) after not timely completing the treatment programs and paying fines, he was then brought back into court and ultimately completed the conditions and paid the fine. (USAO_000396–400, see also USAO_000401-405.) The docket sheet also showed that Rubio required a translator for court appearances, but there was no evidence the treatment-related conditions were explained orally or in writing to him in Spanish.

---

[2] The AAO also had before it a ticket issued by Mount Vernon Police in April 2000 for speeding and driving with a suspended license that does not appear to have been prosecuted. (USAO_000480-482.)

1   Rubio also provided confirmation that there were no police reports available for the 2000 driving

2   arrest for which he was charged with a DUI. (USAO_000479.)

3          Third, Rubio provided a Skagit County District Court docket sheet showing that Rubio

4   was charged in 2001 with one count of domestic-violence-related fourth-degree assault and that

5   the State's motion to dismiss the charge was granted. (USAO_000389, USAO_000406-408.) He

6   also provided confirmation from the Skagit County District Court that no further records exist,

7   (USAO_000389, USAO_000409), and incident report from the Skagit County Sheriff which

8   includes no details of the event (USAO_000484-487). Rubio also provided a narrative

9   description of the events. (USAO_000517-527.)

10         Fourth, Rubio provided a Skagit County District Court docket sheet showing that Rubio

11  was charged in 2004 with one count of domestic-violence-related fourth-degree assault and that

12  he was found not guilty. (USAO_000411-13.) He also provided confirmation from the Skagit

13  County District Court that no further records exist, (USAO_000389, USAO_000409-413), and

14  an incident report from the Skagit County Sheriff which includes no details of the event

15  (USAO_000484-487).

16         Fifth, Rubio provided a stipulated plea agreement showing that the State of Idaho

17  dismissed charges of driving without a license in 2012. (USAO_000389, USAO_000414–418.)

18  He also submitted agency records showing that subsequent removal proceedings were terminated

19  by order of an Immigration Judge in 2016. (Id.)

20         Sixth, Rubio provided a Snohomish County District Court docket sheet showing he was

21  charged with domestic-violence-related fourth-degree assault, found guilty, had his 364-day

22  sentence suspended, and the State's motion for a no-contact order was denied. (USAO_000419–

23  427.) He also supplied a copy of the criminal complaint. (USAO_000429.) He provided a

24

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 7

1   Snohomish County Superform, Snohomish County Sheriff Incident Report and Domestic

2   Violence Supplement, and Witness Statements concerning the 2013 assault. (USAO_000488-

3   494.) Rubio included a narrative explanation of 2013 assault arrest. (USAO_000517-527.)

4        Seventh, Rubio provided a Snohomish County District Court docket showing that Rubio

5   was arrested in August 2013 for criminal trespass in the second degree, but that the case was

6   dismissed because a criminal complaint was not filed within 72 hours. (USAO_000430.) He also

7   provided a Snohomish County District Court docket sheet showing the 2013 criminal trespass

8   charge was re-filed after the initial dismissal, and that the County's motion to dismiss the new

9   charge with prejudice was granted. (USAO_000507-510.) Rubio included a Snohomish County

10  Sheriff Case Report and Superform, Witness Statements, and criminal trespass notice related to

11  the 2013 charge for criminal trespass (USAO_000495-504). Rubio provided a narrative

12  explanation of the trespass charges. (USAO_000517-527.)

13       In reviewing the Rubio's "criminal history," AAO noted that Rubio was "arrested three

14  times for assault in the fourth degree – domestic violence related." (USAO_000008.) The AAO

15  noted that one arrest resulted in a dismissal, while another resulted in the jury finding Rubio not

16  guilty. (Id.) But the AAO stated that "regardless of whether the misconduct resulted in a charge

17  or conviction, it is appropriate for us to consider the factual information contained in police

18  reports as all relevant factors concerning an arrest and conviction." (Id. (citing Matter of

19  Grijalva, 19 I&N 713, 722 (BIA 1998).) The AAO also stated that "the fact that the Applicant

20  was not convicted of the whole of the charges brought against him does not equate with a finding

21  that the offenses or associated behavior in question did not, in fact, occur and USCIS may

22  consider behavior and criminal conduct that does not result in a conviction." (Id. (citing 8 C.F.R.

23  245.24(d)(11); Matter of Thomas, 21 I&N Dec. 20, 23-24 (BIA 1995).) The AAO then

24

1   concluded that "[a]s the misconduct associated with several of his arrests was violent in nature

2   and classified as related to domestic violence, we consider it especially serious." (Id.)

3         The AAO placed particular emphasis on Rubio's "2000 arrest for driving under the

4   influence." (USAO_000008.) The AAO stated that "the record contains some police and court

5   documents relating to this arrest," and noted the absence of an explanation of the "circumstances

6   surrounding this incident" from Rubio himself. (Id.) The AAO did not label the precise weight it

7   placed on the 2000 DUI charge and the conviction for negligent driving and driving with a

8   suspended license. But in a footnote, the AAO confirmed the DUI charge was significant, given

9   its explanation "that driving under the influence of alcohol is both a serious crime and can be a

10   significant favor relevant to our consideration of whether the Application warrants a favorable

11   exercise of our discretion." (Id. at n.1.)

12         The AAO also assessed the record concerning the 2001 and 2004 assault-related arrests.

13   (USAO_000008.) The AAO summarized Rubio's report about the 2001 incident, and noted that

14   Rubio provided all available documentation. (Id.) Rubio reported he had been in a fight with his

15   brother, where the two of them pushed each other. (Id.) The police were called, and they arrested

16   Rubio instead of his brother. (Id.) But Rubio was released the next day and the State then

17   dismissed the charges against him. (Id.) As to the 2004 arrest, Rubio "indicated he was arrested

18   in 2004 for simple assault and the case was dismissed, but he did not provide an explanation of

19   the circumstances of the arrest." (Id.) The AAO then concluded this evidence did "not fully

20   explain the circumstances of the . . . arrests, and the reasons for dismissal" and the AAO was

21   therefore "unable to fully ascertain [Rubio's] conduct that resulted in these arrests." (Id.) This

22   did not alter the AAO's conclusion the 2001 and 2004 arrests were violent in nature and

23   "especially serious." (Id.)

24

1   The AAO separately considered the facts and circumstances involved in the 2013 arrest

2   for criminal trespass for which charges were dismissed. As the AAO noted, the police reports

3   suggested that the manager of a mobile home park called the police because Rubio was in the

4   park "in violation of a criminal trespass notice [the manager] had delivered to" Rubio after he

5   was evicted. (USAO_000009.) The police then arrested Rubio, who told the police that he did

6   not know he had been evicted and had not been warned the park's manager. (Id.) The AAO also

7   noted Rubio's own purportedly "contradict[ory]" explanation that it was "his nephew's girlfriend

8   [who] put a restraining order against him to prevent him from going to the trailer." (Id.) The

9   AAO noted that "the criminal complaint was not filed within 72 hours and per court policy the

10  case was dismissed." (USAO_000009.) The AAO failed to note the charges were refiled and the

11  County's motion for dismissal with prejudice was then granted. (USAO_000507-510.)

12  The AAO then examined the 2013 assault charge and conviction. (USAO_000009.) The

13  AAO reviewed Rubio's explanation, which it found contradicted the police reports. Both the

14  police report and Rubio's explanation appear to concur in the fact that an argument took place

15  between Rubio and his nephew's girlfriend over the presence of her dog in the kitchen while he

16  cooked dinner. Rubio stated that after he left the kitchen, he brushed passed the woman upon his

17  return. (Id.) The victim reported that Rubio had "pushed her in the back, pointed a kitchen knife

18  at her stomach, and cursed at her." (Id.) The AAO concluded that "[t]he relative recency of the

19  arrest and conviction, as well serious and violent nature of the crime are serious adverse factors

20  to be considered in our discretionary determination." (Id.) The AAO noted that "[t]he fact that

21  the Applicant was convicted of the crime less than a year before he applied for U nonimmigrant

22  status is an additional adverse factor to be considered." (Id.) But the AAO failed to note the

23  Court denied the State's request for a no-contact.

24

In its final summary, the AAO stated:

> There is insufficient evidence to establish that the Applicant's arrests and convictions should not be considered as adverse factors in his case or, alternatively, that lesser weight should be accorded to such evidence. Thus, considering both the length and serious nature of the Applicant's criminal history, with a particular focus on his most recent conviction for assault, the adverse factors in the case continue to outweigh the positive and mitigating equities.

(USAO_000009.) The AAO dismissed the appeal, and this constituted the Agency's final action.

**E.    Rubio's Appeal**

Rubio filed suit under the APA, 5 U.S.C. § 702. He alleges that the denial of his application was arbitrary and capricious and not in accordance with the law. (Compl. ¶¶ 44-52.) He seeks an order: (1) setting aside and declaring unlawful the Department of Homeland Security's (DHS) decision on his Application; and (2) instructing DHS to remand the matter to USCIS with instructions to re-adjudicate [his] . . . adjustment of status application in accordance with the law." (Id. Prayer for Relief (2) & (3).)

## ANALYSIS

After examining subject matter jurisdiction and the applicable standard of review, the Court assesses Rubio's three challenges to the AAO's decision. Specifically, Rubio argues the AAO erred by: (1) considering and placing significant weight certain prior arrests that did not lead to conviction; (2) faulting him for not providing unavailable records; and (3) construing his criminal history in a contradictory fashion as compared to his U Visa application.

**A.    Subject Matter Jurisdiction**

Defendants again take issue with the Court's determination that it has subject matter jurisdiction over this action. Defendants cite cases that have reached a conclusion contrary to this Court's concerning its jurisdiction to review the agency action at issue. (Def. Mot. at 6.) But none of the decisions constitutes binding authority on this Court. And Defendants fail to provide

1   any substantive argument as to why the Court should reconsider its decision as to jurisdiction.

2   The Court continues to stand by its analysis of subject matter jurisdiction, which is fully set forth

3   in its Order on Defendants' Motion to Dismiss and Motion for Reconsideration and incorporated

4   into this Order. (See Dkt. Nos. 14, 19.)

5   **B.    Standard of Review**

6        Under the APA, the Court is tasked with deciding whether the agency's decision was

7   arbitrary, capricious, or not in accordance with law. See 5 U.S.C. § 706(2)(A). Although this

8   matter comes before the Court on cross-motions for summary judgment, the Court does not

9   utilize the standard analysis under Rule 56 and it "is not required to resolve any facts in a review

10  of an administrative proceeding." Occidental Eng'g Co. v. I.N.S., 753 F.2d 766, 769 (9th Cir.

11  1985). Instead the Court's purpose "is to determine whether or not as a matter of law the

12  evidence in the administrative record permitted the agency to make the decision it did." Id. And

13  based on Rubio's allegations, the Court is limited to determining whether the AAO committed

14  legal error by relying on improper evidence or drawing conclusions contrary to binding

15  precedent. See Zamorano v. Garland, 2 F.4th 1213, 1221 (9th Cir. 2021).

16  **C.    The AAO's Legal Error in Considering Rubio's Prior Arrests**

17       The AAO acted arbitrarily and capriciously by considering and placing significant weight

18  on Rubio's 2000, 2001, and 2004 arrests. The AAO made unsupported assumptions about the

19  facts and circumstances of these arrests, despite the lack of evidence in the record. And it placed

20  substantial weight on its assumptions about these arrests, despite the fact that the charges were

21  either dismissed or Rubio was found not guilty. The AAO violated Ninth Circuit and Board of

22  Immigration Appeals (BIA) precedent in making these conclusions. They prejudiced Rubio's

23  Application, and the Agency must redetermine the Application without these legal errors.

24

1    In considering an application to become a legal permanent resident, the USCIS must

2    determine whether the "alien's continued presence in the United States is justified on

3    humanitarian grounds, to ensure family unity, or is otherwise in the public interest." 8 U.S.C. §

4    1255(m)(1)(B). The "USCIS may take into account all factors, including acts that would

5    otherwise render the applicant inadmissible." 8 C.F.R. § 245.24(d)(11). "When an alien's

6    conduct results in his having had contact with the criminal justice system or being placed in

7    criminal proceedings, the nature of those contacts and the stage to which those proceedings have

8    progressed should be taken into account and weighed accordingly." Matter of Thomas, 21 I. &

9    N. Dec. at 24–25.

10    In weighing the negative factors, USCIS may consider police reports and testimony as

11    "probative of the circumstances surrounding the [applicant's] arrest" even if the arrest does not

12    lead to a conviction. Matter of Grijalva, 19 I. & N. Dec. at 722; Matter of Teixeira, 21 I. & N.

13    Dec. 316, 220 (BIA 1996) ("We recognize that reliable police reports can be very useful in

14    determining the circumstances surrounding an arrest."). "The fact of arrest, insofar as it bears

15    upon whether an alien might have engaged in underlying conduct and insofar as facts probative

16    of an alien's 'bad character or undesirability as a permanent resident' arise from the arrest itself,

17    plainly can have relevance." Paredes-Urrestarazu v. I.N.S., 36 F.3d 801, 810 (9th Cir. 1994). But

18    USCIS cannot rely on the "the mere fact of arrest" as being "probative of whether the [applicant]

19    had engaged in underlying conduct." Id. at 816. This follows from the longstanding principle

20    outside of the immigration context that "[t]he mere fact that a man has been arrested has very

21    little, if any, probative value in showing that he has engaged in any misconduct." Schware v. Bd.

22    of Bar Exam. of State of N.M., 353 U.S. 232, 241 (1957). Instead, USCIS must consider actual

23    evidence to determine "the facts and circumstances of each case and the nature and strength of

24

1    the evidence presented." <u>Matter of Thomas</u>, 21 I. & N. Dec. at 24. It cannot simply assume facts

2    about the underlying conduct based solely on the fact of arrest. <u>See</u> <u>id.</u>; <u>Paredes-Urrestarazu</u>, 36

3    F.3d at 816.

4         Additionally, "[w]hen an alien's conduct results in his having had contact with the

5    criminal justice system or being placed in criminal proceedings, the nature of those contacts and

6    the stage to which those proceedings have progressed should be taken into account and weighed

7    accordingly." <u>Matter of Thomas</u>, 21 I. & N. Dec. at 24. And critically, USCIS must be "hesitant

8    to give substantial weight to an arrest report, absent a conviction or corroborating evidence of the

9    allegations contained therein." <u>In Re Arreguin De Rodriguez</u>, 21 I. & N. Dec. 38, 42 (BIA 1995);

10   <u>see</u> <u>Chuil Chulin v. Zuchowski</u>, No. 21-CV-00016-LB, 2021 WL 3847825, at *7 (N.D. Cal. Aug.

11   27, 2021) (noting that "<u>Arreguin</u> does not hold that it is per se improper to consider an arrest

12   report . . . [b]ut it is a ground for remand when an agency gives significant weight to

13   uncorroborated arrest reports.")

14        This case presents the precise scenario that the Ninth Circuit warned against in <u>Paredes-</u>

15   <u>Urrestarazu</u>, 36 F.3d at 816. Here, the AAO placed substantial adverse weight on the fact of

16   several arrests where the record contains no evidence explaining their facts and circumstances

17   and where Rubio was either found not guilty or where charges were dismissed. This runs afoul of

18   <u>Paredes-Urrestarazu</u> and <u>Arreguin</u>, as well as the very BIA precedent on which the AAO relies to

19   support its consideration of certain arrests. The Court reviews the three significant legal errors in

20   the AAO's decision.

21        First, the AAO erred by finding Rubio had "[an] especially serious" criminal history of

22   domestic violence. (USAO_000008.) Citing the 2001, 2004, and 2013 domestic-violence-related

23   fourth-degree assault arrests, the AAO concluded that "the misconduct associated with several of

24

his arrests was violent in nature and classified as related to domestic violence." (Id.) But there

was essentially nothing in the record to support this conclusion as to the 2001 and 2004 arrests.

The Court notes from the outset that a fourth degree assault does not necessarily involve serious

violent conduct—it is the lowest level criminal offense for assault that can be charged based on a

simple, unconsented touch with criminal intent. See RCW 9A.36.041 (2001 West); Clark v.

Baines, 150 Wn.2d 905, 908 n.3 (2004). And despite Rubio's diligence, there are no police

reports available as to the 2001 and 2004 arrests. The only evidence about the facts and

circumstances of either arrest came from Rubio. He explained he was arrested in 2001 after he

and his brother had an argument that involved pushing and that he was arrested in 2004 for

simple assault. The AAO itself noted it was "unable to fully ascertain [Rubio's] conduct that

resulted in these arrests." (USAO_000008.) Despite this express admission the record lacked

evidence, the AAO concluded that Rubio had engaged in "especially serious" domestic-violence

misconduct. (USAO_000008.) In so doing, the USCIS ran afoul of the Ninth Circuit's precise

warning in Paredes-Urrestarazu, that "the mere fact of arrest" cannot be "probative of whether

the [applicant] had engaged in underlying conduct." Id. at 816. And USCIS ignored BIA

precedent it invoked to support its consideration of arrests, which requires USCIS to consider

competent evidence such as "the factual information contained in police reports"—not just the

fact of arrest—to determine the facts and circumstances of the conduct that led to an arrest.

(USAO_000008 (citing Matter of Grijalva, 19 I. & N. Dec. at 722) (emphasis added).) Here, the

AAO concluded that Rubio had engaged in violent, domestic-violence-related conduct in 2001

and 2004 based merely on the fact of arrest without any police reports or similar evidence. And

although Rubio admitted to pushing his brother in 2001, such minimal physical contact does not

1   support a finding that he engaged violent conduct that is "especially serious." This constitutes

2   legal error. See Paredes-Urrestarazu, 36 F.3d at 816.

3        Second, the AAO compounded its error by placing substantial weight on the 2001 and

4   2004 arrests without considering the disposition of either case. See Arreguin, 21 I. & N. Dec. at

5   42. Although the AAO put "particular focus on [Rubio's] most recent conviction for assault [in

6   2013]," it denied Rubio's Application based on "both the length and serious nature of [Rubio's]

7   criminal history." (USAO_000009.) Central to this "length[y] and serious . . . criminal history" is

8   the AAO's conclusion that "the misconduct associated with several of [Rubio's] arrests [i.e., the

9   2001 and 2004 arrests] was violent in nature and classified as related to domestic violence,"

10  which the USCIS "consider[ed] . . . especially serious." (USAO_000008.) This makes clear that

11  the AAO placed significant weight on the 2001 and 2004 arrests as part of the "length[y] and

12  serious . . . criminal history." But the AAO nowhere explained why it placed such weight on the

13  fact of arrest when charges stemming from the 2001 arrest were dismissed and Rubio was found

14  not guilty of the 2004 assault charge. Nor did it reconcile its decision with the absence of

15  evidence showing either assault was especially serious or violent or the fact that a fourth degree

16  assault need not necessarily involve violent contact. The AAO therefore erred in placing

17  "substantial weight" on the mere fact of these two arrests where there was "the absen[ce of] a

18  conviction or corroborating evidence of the allegations contained" in the record. Arreguin, 21 I.

19  & N. Dec. at 42. This is legal error.

20       Third, the AAO erred by placing substantial weight on Rubio's 2000 driving arrest and

21  finding that it was evidence of a "serious crime" that could be considered a "significant adverse

22  factor." (USAO_000008 & id. n.1.) The AAO first erred by finding that Rubio's "criminal

23  history" included a "2000 arrest for driving under the influence." (USAO_000008.) The only

24

1  evidence in the record concerning this incident is a court docket sheet showing Rubio was

2  <u>charged</u> with a DUI, not that he was <u>arrested</u> for a DUI. There are no records relating to the

3  arrest, such as a police report or traffic ticket. The AAO therefore erred in its determination that

4  "the record contains some police . . . documents relating to this arrest." (USAO_000008.) Even if

5  Rubio had been arrested for a DUI, there is no evidence in the record concerning the facts and

6  circumstances of Rubio's conduct. Indeed, the AAO admitted it could not "fully ascertain the

7  [Rubio's] conduct that resulted in th[is] arrest[]." (USAO_000008.) The AAO therefore

8  committed legal error by assuming Rubio had been driving under the influence based solely on

9  the mere fact that he was charged with a DUI without any evidence of what Rubio had actually

10  done that precipitated his arrest. See Paredes-Urrestarazu, 36 F.3d at 816. Additionally, the AAO

11  erred by placing significant weight on its assumptions about the misconduct without a supporting

12  conviction or corroborating evidence. See In Re Arreguin De Rodriguez, 21 I. & N. Dec. at 42.

13  The Court finds that the AAO placed significant weight on the DUI charge, given that it singled

14  this incident out as part of Rubio's "criminal history" and specifically noted that a DUI "is both a

15  serious crime and can be a significant adverse factor[.]" (See USAO_000008 & id. n.1.) This is

16  legal error.

17        The Court finds that the three legal errors identified above infected the AAO's

18  determination of Rubio's Application and render its determination both arbitrary and capricious.

19  Not only did the AAO make gross assumptions about Rubio's past conduct in 2000, 2001, and

20  2004, but it placed significant weight on it as forming part of a "length[y] and serious . . .

21  criminal history" that justified the denial of his Application. (USAO_000009.) Contrary to

22  Defendants' argument, these errors were not harmless. The AAO's characterization of and the

23  weight it placed on the 2000, 2001, and 2004 arrests materially affected its determination. See

24

1   Idaho Wool Growers Ass'n v. Vilsack, 816 F.3d 1095, 1104 (9th Cir. 2016.) Excluding these

2   arrests for which no records identify or explain the underlying conduct and where the charges

3   were either dismissed or Rubio was not found guilty, leaves only a record showing: (1) a 1991

4   petty theft conviction; (2) a 2000 conviction for negligent driving and driving without a license

5   that resulted in no jail time; (3) a 2013 domestic-violence assault conviction that resulted in no

6   jail time and denial of a no-contact order request; and (4) a 2013 criminal trespass charge that

7   was dismissed with prejudice. This limited history of contacts with law enforcement shows how

8   central the AAO's incorrect assumptions about the 2000, 2001, and 2004 arrests are to its

9   conclusion that Rubio had a "length[y] and serious . . . criminal history." And it affirms the

10  materiality and prejudicial effect of the AAO's legal error.

11        The Court also rejects Defendants' argument that the "arrests that did not lead to

12  convictions are cited, but not relied on by the AAO with any significant weight." (Defs. Cross-

13  Mot. at 9.) This argument does not track the substance of the AAO's decision. While the AAO

14  put "particular focus" on the 2013 assault conviction, it placed substantial weight on "the length

15  and serious nature of [Rubio's] criminal history," which it labeled as including the "especially

16  serious" domestic-violence-related arrests in 2001 and 2004 that the AAO assumed to be

17  "violent in nature" based only on the fact of arrest. (USAO_000008.) It also includes the AAO's

18  incorrect belief that Rubio was arrested for a DUI in 2000 and that, notwithstanding his plea to a

19  different crime, he had been driving under the influence and engaged in serious, adverse

20  misconduct.

21        Separately, the Court notes two addition omissions in the AAO's decision that are

22  relevant to its reconsideration of Rubio's application. First, the AAO failed to consider or weigh

23  the fact that the 2013 criminal trespass charges were dismissed with prejudice and not on a mere

24

1    technicality. The AAO overlooked the record evidence showing that the County re-filed the

2    charges against Rubio and then moved to dismiss them with prejudice. The AAO was therefore

3    incorrect in finding that Rubio avoided prosecution merely on a technicality. On remand, the

4    AAO must consider and weigh the impact of the dismissal with prejudice. Second, the AAO

5    failed to acknowledge that the court in the 2013 assault case denied the State's request for a no-

6    contact order. While the Court is not here to substitute its judgment, it commends this fact in the

7    record to the Agency in assessing the severity of the crime and the extent to which it involved

8    serious, domestic violence.

9    **D.    The AAO Improperly Faulted Rubio for Absent Records**

10         The Court also agrees with Rubio that the AAO faulted him for not being able to produce

11   police reports.

12         Under the APA, an agency may act arbitrarily and capriciously where it requires the

13   application to prove a negative. See Arizona Cattle Growers' Ass'n v. U.S. Fish & Wildlife, 273

14   F.3d 1229, 1244 (9th Cir. 2001). Here, the AAO faulted Rubio for "not fully explain[ing] the

15   circumstances of the 2000, 2001, and 2004 arrests." (USAO_000008.) But the primary reason for

16   the absence of "documentary evidence" of these arrests was due to the fact that neither law

17   enforcement nor the courts had any records of these legacy events. So despite Rubio's best

18   efforts, he was unable to provide further documentary evidence as the AAO requested. And

19   while the AAO concluded that it was "unable to fully ascertain [Rubio's] conduct that resulted in

20   these arrests," it nevertheless made substantial, adverse conclusions about the facts and

21   circumstances of each arrest and weighed that against Rubio. This is yet another legal error

22   undermining the validity of the AAO's decision. On remand, the Agency must avoid this same

23   legal error.

24

1    **E.     The AAO Was Permitted to Reach a Different Conclusion from its U Visa Approval**

2           Rubio argues that the AAO acted arbitrarily and capriciously by finding his criminal

3    history outweighed the positive equites when it had earlier found his criminal history did not

4    outweigh the positive equities when it approved his U visa. This argument lacks merit.

5           As Rubio concedes, "'[a]gencies are, of course, allowed to change their views over

6    time.'" (Mot. at 19 (quoting <u>Nw. Immigrant Rts. Project v. United States Citizenship & Immigr.</u>

7    <u>Servs.</u>, 496 F. Supp. 3d 31, 75 (D.D.C. 2020) ("NWIRP")).) Rubio nevertheless insists that the

8    agency must still "'address the [agency's] prior, conflicting conclusions.'" (<u>Id.</u> (quoting <u>NWIRP</u>,

9    496 F. Supp. 3d at 75).) But the authority Rubio cites in support of this latter contention concerns

10   situations where the agency took conflicting stances on the same application for administrative

11   relief or changed an administrative rule without addressing prior conflicting conclusions that

12   supported an earlier version of the rule. <u>See</u> <u>Doe v. United States Citizenship & Immigr. Servs.</u>,

13   410 F. Supp. 3d 86, 99 (D.D.C. 2019) (considering visa applications of the same plaintiffs);

14   <u>NWIRP</u>, 496 F. Supp. 3d at 75 (noting the failure to address prior, conflicting conclusions about

15   the impact of the same rule); <u>Rahman v. Napolitano</u>, 814 F. Supp. 2d 1098, 1108 (W.D. Wash.

16   2011) (considering prior approvals of the same individual's H-1B petition).

17          While the AAO did not expressly address the reasoning underlying the USCIS's prior

18   approval of Rubio's U visa, it sufficiently provided a detailed explanation of why it denied the

19   adjustment of status based on a different record before it. That record, as Rubio concedes, was

20   different than the record before the agency at the time the U visa was approved. Most notably,

21   given the timing, the agency did not consider Rubio's 2013 conviction for fourth degree assault

22   and 2013 arrest for criminal trespass when it approved the U visa, because they occurred after

23   Rubio applied. As such, the AAO was faced with a different record, and it specifically took the

24

1  2013 arrests and conviction into consideration. It was not error to have come to a different

2  conclusion based on a different record.

3       While the Court rejects Rubio's argument, it does not mean that the AAO otherwise

4  properly considered and weighed the admissible evidence before it.

5                              **CONCLUSION**

6       While the AAO is entitled to consider and apply the proper weight to the facts and

7  circumstances of arrests even if no conviction results, it cannot make assumptions about the

8  applicant's conduct based solely on the fact of arrest. Nor can it place substantial weight on the

9  events underlying an arrest without due consideration of the ultimate disposition of the

10  prosecution of the crime. Here, the AAO made substantial and unsupported assumptions about

11  Rubio's 2000, 2001, and 2004 arrests that are based solely on the fact of arrest, and no other

12  evidence. It also placed substantial weight on these arrests without any consideration of the fact

13  that charges were either dismissed or Rubio was found not guilty. And the AAO erroneously

14  drew negative inferences about Rubio's conduct relating to these arrests from the lack of

15  available police reports. All of these legal determinations violated both Ninth Circuit and BIA

16  precedent and render the AAO's denial of Rubio's Application arbitrary and capricious in

17  violation of the APA. The Court therefore GRANTS Rubio's Motion and DENIES Defendants'

18  Motion. The Court VACATES the AAO's decision and REMANDS the Application for further

19  proceedings consistent with this Order.

20       The clerk is ordered to provide copies of this order to all counsel.

21       Dated November 7, 2023.

22

23

Marsha J. Pechman
United States Senior District Judge

24